# BERTHA ELIZABETH TERRY v. WM. THOMAS TERRY.

Western Section.    March 23, 1928.

Petition for Certiorari denied by Supreme Court, June 30, 1928.

Harsh & Harsh, of Memphis, for appellant.

A. A. Kincannon, Deputy Divorce Proctor, of Memphis, for appellee.

HEISKELL, J. This is a suit for divorce. The bill alleges that complainant, Bertha Elizabeth Terry, and defendant, were married on October 26, 1897, in Atlanta, Georgia; that they moved to Memphis, Tennessee, December 10, 1920, and that he abandoned her on January 28, 1924, and returned to his parents in Atlanta, Georgia, and has contributed nothing to her support since that time.

There was publication for defendant as a nonresident and a pro confesso. The Proctor filed a formal answer.

The testimony of complainant is almost as meager as her bill. She says, in 1920, when they came to Memphis, defendant's father gave him forty thousand ($40,000) dollars. What became of it she does not say, but does say, that shortly after they moved to Memphis, defendant refused to work and did not support complainant, but continued to live at home; that she often told defendant, that she would not live with him unless he made provision for her support; that they continued to live together in this fashion until January 28, 1924, when he left Memphis, and went to Atlanta, where he has been living continuously ever since.

That they purchased a home on Young avenue; that the title was taken in her name, and she realized about fourteen hundred ($1400) or fifteen hundred ($1500) dollars from the sale of this property.

On cross-examination, she is asked—why her husband left Memphis, and she said "he had to go." When asked—why he had to

go, she said he was in trouble here; that he had bought a diamond ring on the installment plan and pawned it and could not pay the installments; ·that she and her sister redeemed the ring and returned it to the jewelry house and that the defendant left for At-. lanta, the same day and she has never seen him or heard from him; since that day.

Richard Cain and Mrs. Evelyn Sherman, testified as follows:

"That the defendant left Memphis, on the 28th day of January, 1924, and went to Atlanta, to live with his father; that he has not returned to the complainant, nor has he contributed anything to her support since that time.

"That the defendant received property valued at forty thousand ($40,000) dollars, as his share of his father's property division in the year 1920; that for a long period before the separation, the de‑ fendant did not support or provide for the complainant."

The Chancellor dismissed the bill and complainant has appealed.

The testimony is not reported by questions and answers, but the substance of it is purported to be stated. The Chancellor had the witnesses before him and no doubt got a better idea of the testimony than we can get from the record. He thought the proof insufficient. It seems to us to be especially lacking in detail and circumstance. They lived together in Atlanta for twenty years, raised one son to manhood. They came to Memphis on December 10, 1920, with forty thousand ($40,000) dollars, yet for some time before January 28, 1924, he was refusing to work, failing to support her and she was threatening to leave him. How did she live? Did she work? Did they run through the forty thousand ($40,000) dollars, in say, less than two years? Why did she say he had to leave Memphis when the ring had been redeemed? If she had not heard from him since January 28, 1924, how does she know that he is still living in Atlanta, and has lived there continuously since the separation?

The corroborating witnesses do not state how they know the facts as to which they testify. Their testimony sounds like hearsay. It reads like they were saying what they had heard from the complainant and that she told them rather more than she knew her‑ self. If this be considered an unfair criticism of the testimony then it should have been brought out and brought up in more convincing shape. The case looks like one in which the complainant did not take the court into her confidence. The Chancellor, having had a far better opportunity to learn the merits of the case than we have, we are not inclined to reverse his decree.

The assignments of error are overruled and the decree of the lower court is affirmed.

Owen and Senter, JJ., concur.